Thank you, Your Honor, and may it please the Court. This case lies at the intersection of two very important responsibilities of the federal  One, enforcing the will of Congress, expressed through the Copyright Act, to make ownership of copyrights clear and definite. And secondly, upholding the standards that a plaintiff must meet in order to overcome qualified immunity. What plaintiffs are trying to do here violates both of these principles, because we should not force a public employee to a jury trial facing personal liability for claim damages of $784 million based on five words allegedly describing a lost agreement. I would own the copyright. That's it. Simply put, these five words purporting to describe an alleged writing that no one can find are not enough under the Copyright Act, and they are not enough to overcome qualified immunity. Merely calling this a fact issue does not insulate it from review, because of course this Court is fully empowered to assess the materiality of any fact dispute. With the Court's permission, I will start with the first prong of the Qualified Immunity Test, then discuss the requirements for establishing a work-for-hire under the Copyright Act, and then close with a brief discussion of our alternative argument to at least narrow the claims here against Mr. Marquardt by dismissing the DMCA claim based on the second clearly established prong of the Qualified Immunity Test. Starting with the first prong of the Qualified Immunity Test, does the right at issue have to belong to the plaintiff to satisfy this test? This Court unequivocally answered yes in Kinney, and four members of this Court said yes in a concurrence filed in the first en banc consideration of the Hernandez v. Mesa case. And that was Judge Jones writing in concurrence to the per curiam opinion, and in that case certainly the analysis was under the first prong of the Qualified Immunity Test as to whether there was a right at issue belonging to the plaintiff. Now in most cases involving constitutional rights of general applicability, the requirement that the right belong to the plaintiff may be of no particular significance and may merit little discussion. It matters here because Mr. Bynum is claiming a statutory right that is not of general applicability. Here again we have these two key principles working together. Qualified immunity says that we shouldn't force a public employee into a jury trial when the plaintiff can't even show that he has a right under federal law. And copyright law imposes strict requirements on those who would claim ownership of a copyright outside of actually writing or creating the work themselves. Moving to the requirements of the Copyright Act, we start with the fundamental principle that a copyright will almost always vest in the creator, not those who seek to profit from creators. The one exception to this is the work for hire doctrine, which allows a copyright to vest in someone who hires a creator, but only if there is a writing with specific terms that is reasonably contemporaneous with the creation of the work. And of course this is a summary from the case law across multiple circuits, but again the key requirements are a writing with specific terms reasonably contemporaneous with the creation of the work. What do plaintiffs offer as a way of satisfying these requirements? There is one actual document that has been produced. It's dated two weeks after the alleged infringement and 17 years after the alleged creation of the work. In our motion for summary judgment, we showed unequivocally that this document was way too late to meet the requirements of the Copyright Act to establish a work for hire. And we know this because of what Mr. Bynum did next. He didn't put up much of a defense on the February 2014 writing. Instead, he submitted a declaration stating that he and the creator did have a written agreement before the work was created, but he lost it. As implausible as that seems, we take these allegations about a supposedly lost 1997 agreement as true for the purposes of this appeal. But of course, just having a writing reasonably contemporaneous with the work, as alleged, does not equal a work for hire. To determine if it is a work for hire, we have to know something about the agreement's terms. And here's where we have the five words. I would own the copyright. And I'll just make a few points about this phrase. First, it is so vague and indefinite that the District Court found it to say nothing about the terms of the agreement at all. According to the District Court, all the declaration addressed was the existence of the agreement, not its terms. Second, this phrase leaves more questions than it answers. When is this ownership supposed to arise? When the plaintiff, Mr. Bynum, paid what he promised to the author? We know that didn't happen until February 2014, after the alleged agreement. When the article was published, we know that hasn't even happened yet. And here, I think it's interesting that plaintiffs actually also treat the phrase as vague and indefinite because in their brief, they invite this court to simply use it to adopt any theory of ownership, work for hire, assignment, whatever anyone wants to believe. But this kind of malleability is not a feature, it's a bug. Plaintiffs can't meet the requirements of the Copyright Act if they say nothing definitive about the terms of the agreement. And certainly, at least in one respect, the District Court agreed because when plaintiffs themselves moved for summary judgment on ownership, the District Court denied it and said that they had not shown ownership as a matter of law. And that's certainly important to consider in our qualified immunity analysis. So I have a question about your appellate jurisdiction not focused on a fact issue. And that is that in your motion to dismiss, you raised qualified immunity and that was denied. You did not appeal it. And then, in your motion for summary judgment, you didn't raise qualified immunity. So I'm really wondering whether qualified immunity is properly presented on this appeal, regardless of what may happen thereafter. Certainly, Your Honor. We did raise qualified immunity in the motion for summary judgment. And that's certainly, I believe that's cited in the briefs and we can provide the record citation to the court on that. We did raise qualified immunity in our motion for summary judgment. And we raised it in a different context. We asked the court to reconsider its determination on qualified immunity that it had made at the motion to dismiss stage. But clearly, the motion for summary judgment that we made was based not only on qualified immunity, but we also introduced evidence, and so it certainly went beyond what we had done at the motion to dismiss stage. All right. But I guess I don't understand how you get two bites of the apple. I mean, we have lots of qualified immunity appeals that come to us at the motion to dismiss stage. We also have a lot of them that come on the summary judgment stage, as you know. But if you didn't raise it after denial at the motion to dismiss stage, what case law is there that tells us that you can take the second bite, assuming that you properly raised it in the motion for summary judgment? Certainly, Your Honor. And what I would point this court to is certainly this court's determination in the Johnson case, which distinguished Armstrong. So Armstrong was kind of an older case, it was pre-Barron's, where this court had held that simply raising the same motion in exactly the same way would not restart the appellate clock. So in that case, what had happened was the defendants had raised qualified immunity in motion to dismiss, and then had also raised it essentially in exactly the same way at the motion for summary judgment stage. And what this court said in Armstrong was that that was not permissible. This court went back and has limited Armstrong. That's the Johnson case that's also cited in our briefs, and simply says that certainly when if it's exactly the same type of issue, that's what Armstrong was dealing with. And the key thing I would really point Your Honor to is we have a footnote to this effect, and it's also addressed in the substance of our reply brief. Multiple courts of appeals have held that we are not going to insist that public employees always file an appeal off of a motion to dismiss in order to preserve those issues. And those are from the Second Circuit, the Third Circuit, the Seventh Circuit, and the Tenth Circuit. And all of those are completely in line, particularly after Barron's where the Supreme Court held that a defendant could be entitled to more than one interlocutory appeal. What all of these courts of appeals have said is we do not, as a court of appeal, want to institute a rule that would force every public employee who files for qualified immunity on a motion to dismiss to always take an interlocutory appeal of that decision or risk losing any of those arguments. And that's laid out very clearly in their reasoning. They're not wanting to impose that type of requirement, and they view that as essentially an unwise requirement that would force employees to always take an interlocutory appeal. And what I would say with respect to this Court's case law is that certainly Armstrong has been limited post Barron's, and there's no decision that I'm aware of in which this with the Second, Third, Seventh, and Tenth that have said clearly and unequivocally we are not going to require employees to take an interlocutory appeal at the motion to dismiss stage in order to preserve that on a summary judgment stage. So we don't have specific case law from this Court bringing itself into line with those courts of appeals, but we can distinguish ourselves from Armstrong based on Johnson, and that's covered in the briefs, particularly because here what happened is we raised qualified immunity at the motion to dismiss stage, but it only got stronger at the stage where we moved for summary judgment. So in this particular case, we are bringing affidavits to bear. We are bringing evidence to bear, and we are making it is in some sense the same argument because it is qualified immunity, but of course we're doing it in the motion for summary judgment context, and we are raising additional issues and bringing additional evidence to bear. So assume that we were to dismiss this appeal, I understand that you oppose that, but assume that we were to dismiss this appeal for want of jurisdiction, Mr. Marquardt would still have the opportunity, would he not, on the merits to defend himself against the complaint, and ultimately if he were to lose there to have an appeal on the merits fully raising qualified immunity? Well, I would say two things to that. Certainly Your Honor is correct that if Mr. Marquardt were to be remanded and were to be forced to face a jury trial for $784 million personal liability, he would absolutely raise every defense possible and would certainly vigorously defend that. The second thing I would say is that essentially going back to the primary responsibility of the federal judiciary to uphold the standards of qualified immunity, that would essentially be the court abdicating its role on qualified immunity because the point of qualified immunity is not just immunity from liability, but immunity from suit, not to force a public employee to stand for a jury trial. Well, immunity from suit and even in many cases immunity from discovery, but you had that opportunity to have immunity from discovery and from suit by appealing the denial of the dismissal on qualified immunity and you didn't take that. I mean, that may have been strategic reasons for doing that, I understand, but that's, you can't have it both ways it seems to me. Well, let me say two things about that, Your Honor, just to clarify. So with respect to our arguments on the first prong of the qualified immunity analysis, those could not have been raised at the motion to dismiss stage because we did have to, we did discovery, they've never done any, but we did discovery about what the basis for their ownership was and we used that to move for summary judgment because clearly this piece of paper that they had in this alleged agreement don't qualify. That was not available at the motion to dismiss stage because those weren't pled in the complaint. He didn't, you could imagine a situation where maybe he would have attached it or something. That's not what happened. So with respect to these arguments on ownership, those were not available at the motion to dismiss stage and we did raise those once we learned of those in the motion for summary judgment context and those are entirely appropriate for this court to consider that was not available at the motion to dismiss stage. The second thing that I would say is our arguments on the DMCA, this smaller, more cabin claim about the second prong of the qualified immunity analysis, those were raised in the motion to dismiss stage because those were presented by the pleadings and so if, if there is an issue here with timeliness, it would only be with respect to the DMCA claims and it would not be with respect to the ownership claims. But if the plaintiff has a valid copyright claim, does your qualified immunity defense fail? If they have a valid copyright, I'm sorry I said claim, if they have a valid copyright, does your qualified immunity defense fail? Well, I think what I would say to that, Your Honor, is it meets, if they have a valid claim to a copyright, it meets the first prong of the qualified immunity test. They may still fail on the second prong for lots of other reasons that eventually, even if they do no discovery and we eventually go to a jury trial, Mr. Marquardt will certainly explain what happened and there are defenses on the second prong. I'll stop unless, Your Honor, it's, can I finish my, I had a brief response. So, in that sense, certainly, we do, we would still have claims that we could bring with respect to the second prong, but I think Your Honor is correct that the first prong in this situation is addressed by the question of whether plaintiffs have shown that they have a right under federal law and if they, if they don't, then it can't be the first prong of the test. Thank you, Your Honor. Ms. Goldenberg. Thank you. This court's jurisdiction on an interlocutory appeal raising qualified immunity is quite limited and this court lacks jurisdiction over any of the issues raised by Marquardt here as the district court decided when it took the very unusual step of certifying this appeal as frivolous so that discovery could proceed in the district court despite dependency of the appeal. So, there are two independent jurisdictional flaws about copyright ownership. The most straightforward of those, I think, is that the court can't review or look behind the district court's determination that there is a genuine issue of fact on copyright ownership and also, standing issues aren't reviewable in this posture because they're not part of the qualified immunity inquiry and Marquardt's challenge . . . It has to be material also. We can decide materiality but not genuineness. Yes, Your Honor. I think that's right, but here what the district court said was that there was an issue of fact that needed to go to a fact finder and everyone agrees that the issue of copyright merits of the case. So, let me start then with the genuine issue of fact point and that is that this court has held on numerous occasions that the court lacks the power to review the district court's decision that there is a genuine factual dispute and that the court, and I'm quoting, may not consider any of the defendant's arguments that challenge the district court's assessment that certain facts are sufficiently supported in the summary judgment record. That's this court's decision in Johnson and this court's decision in Kinney is also relevant here as well. On ownership, the district court said there was a genuine issue of fact as to whether the 1997 agreement transferred copyright to the plaintiffs, including specifically whether it was a work-for-hire agreement. And so, it's a job for the district court at this stage to look at the evidence, draw the inferences. It's not a job for this court on interlocutory appeal and Marquardt obviously has a different view of the facts, but as Judge Smith's question, I think, pointed out, that's something that would be resolved by a fact finder as the case moves forward. So the key places to look for the district court determination that there's a genuine issue here are the summary judgment ruling, starting at ROA 5559, where the district court said that Bynum aversed that Canning was hired to write the article and that the plaintiffs owned the rights to it in 2007, and that raises a fact issue. And then a few pages on in the summary judgment ruling, where in denying the plaintiff's motion for summary judgment on ownership, the court says that plaintiffs have a work-for-hire theory. And then, the district court's certification of this appeal as frivolous, in part on this ground, that's docket number 197 in the district court at page 5, where the court explains its summary judgment ruling and says that it expressly found an issue of fact on the work-for-hire issue. And so, the evidence in the record goes beyond the couple of words that Marquardt's counsel emphasized here, and I can explain that evidence if the court would like, but that's the end of the matter as far as this court's review of the ownership issue is concerned. And this court need not address anything having to do with the 2014 agreement, although those arguments are all laid out in our briefs. The district court found an issue of fact, and that is not something this court can review at this stage. There's another problem as well, a very serious problem, jurisdictional problem, with a copyright ownership issue here, and that is that it is a standing issue, not a qualified immunity issue, and so this court doesn't have jurisdiction over that on interlocutory appeal. It's not a question about whether Marquardt violated copyright law, or whether that law was clearly established. Based on what's alleged here, he very plainly did violate copyright law, and he plainly violated someone's copyright rights. Someone had the copyright in that article, it was not owned by the athletic department, and so someone's copyright rights were violated, and that is under clearly established law. Qualified immunity questions are about whether there's anyone out there whose rights were actually violated by what the defendant did. The only question here is whether the correct plaintiffs have sued, and as the Seventh Circuit ruled in triad, and this court's unpublished decision in Owens also indicates, that's a standing question, and it's not within this court's jurisdiction in this posture, and I think the distinction I'm talking about can be well illustrated by an example that's drawn from the Seventh Circuit's triad case. In a case in the Seventh Circuit that preceded triad, a defendant had discriminated against white individuals on the basis of their race, and the question was whether that amounted to a violation of the law. That is a qualified immunity question. If the thing the defendant did in the real world didn't violate the law, then qualified immunity applied. The question in triad was different. It was whether if white shareholders of a corporation had been discriminated against based on their race, which by that point the Seventh Circuit had decided was a violation of law, whether the corporation was the proper party to sue. That's not a qualified immunity question, it is a standing question, and so there was no jurisdiction over it, and that's equivalent to what we have here. It's just a standing question. Someone's copyright rights were violated by this conduct, and it is just a question of whether it's the plaintiffs that have the right to bring the suit. And if the rule were otherwise, then the purposes of qualified immunity would be undermined, because those purposes are to protect defendants who act lawfully in light of clearly established law. And obviously, in stripping off copyright information from this document, changing the Marquardt tries to muddy the waters on this by pointing to this court's decision in Kinney, but the issues that the court found jurisdiction to review in Kinney are on the qualified immunity side of the line. For instance, in that case, in the real world, defendants were alleged to have done something bad to expert witnesses in violation of a statute. And so if the statute didn't cover expert witnesses, then defendants hadn't violated the law. Again, that is distinguishable from the standing situation that we have here, where Marquardt definitely violated the law by doing what he did, because someone owned this copyright. There is yet another jurisdictional problem, not with the ownership issues, but with the DMCA issue, and there's been some discussion about that already. And the appeal of that issue is untimely, because it is about a ruling that the district court made long ago in 2019, well more than 30 days before the notice of appeal here was filed. There's no decision that says that you can take an interlocutory order that doesn't rule on an issue, somehow get the Court of Appeals to decide that, when you appeal that order, to decide an issue that was ruled on in a much earlier order that was never appealed. So Marquardt's argument... Was it appealable, though, at that time? It was appealable at that time, yes. It was appealable at the motion to dismiss stage, and it could have been appealed at that time. Here, on summary judgment, Marquardt raised only an argument about qualified immunity as to these ownership issues. The whole summary judgment motion, I really urge the Court to look at it, and look at the statement of issues, in particular, in Marquardt's summary judgment motion. It was all about ownership issues, and it said, we should have qualified immunity because of these ownership issues. It did not re-raise the qualified immunity argument on the DMCA that was made at the motion to dismiss stage, and that's being pressed here, which is somehow there was not clearly established law on the DMCA in 2014 when this conduct took place. The district court, in certifying this appeal as frivolous, said as much, the district court understood the summary judgment paper as the same way that I'm describing it, and its own summary judgment ruling in that way, and so the district court didn't address this argument at the summary judgment stage. It's not ruled on in the order that Marquardt appealed here, and I think Marquardt's whole appeal of the DMCA issue is clearly premised on the mistaken belief that somehow there is a merger doctrine that applies in this context, in the interlocutory context, just as there is a merger doctrine that we all know applies to final judgments. That's wrong. The district court's old decision on the DMCA issue doesn't somehow merge into the summary judgment order such that Marquardt could appeal all the district court's rulings in this case at one time, and I think what gives away the story here is Marquardt's notice of appeal. If you look at the notice of appeal for this appeal, it says he's appealing the 2020 summary judgment order, and he's appealing the 2019 order that ruled on the DMCA issue, and he relies, in quotes, it says it's the merger doctrine that lets me do this. That is simply incorrect. The merger doctrine doesn't apply in this context. The cases that Marquardt cites in his reply brief, Barron's and the courts of appeals cases applying the Supreme Court's decision in Barron's, are just irrelevant here because they deal with a completely distinct question. Those decisions say that you can have multiple qualified immunity appeals in one case. If you raise an issue on a motion to dismiss, you lose it, you can appeal it, and then you get some more evidence about it. You can raise it again at the summary judgment stage, and if you lose, you can appeal again then too. That has nothing to do with what the problem is here. It doesn't excuse you from appealing within 30 days of an order that actually rules on your issue, and it says nothing then about the fatal problem with Marquardt's effort to circumvent the jurisdictional 30-day rule in this case. You agree, though, I assume, that if we were to dismiss this appeal for want of jurisdiction, Mr. Marquardt still, at the merit stage, would be able fully to present a defense of immunity. Absolutely. Yes, Your Honor. I think there are a lot of these issues, certainly the ownership issue, and I think issues relating to the DMCA as well. It would be open to Mr. Marquardt to raise fact issues and other issues as the case proceeded, but that doesn't mean that there is somehow jurisdiction on this qualified immunity interlocutory appeal at this particular stage of the case. And even if the Court did not think there was a jurisdictional problem with the DMCA argument, I would just like to briefly point out that there is no doubt that when Marquardt acted in 2014, by stripping off this copyright management information from the biography, that the law was clearly established that that was a violation of the DMCA. The language of the statute, it's 17 U.S.C. 1202, is clear on its face that that information need not be digital. That's Marquardt's argument about clearly established. It doesn't have to be digital. In fact, it says that the prohibition includes digital information, which shows that digital information is not somehow a limitation on what the statute applies to. There was a robust consensus of authority on this in 2014, and that's the language in this Court's decisions about clearly established law, including a Third Circuit decision, and no case since then has gone Marquardt's way. He points to two district court decisions in total, only two. And he says in his reply brief, oh, I cited these more recent cases saying that there is debate and disagreement. If you look at those cases, they also only cite these same two district court decisions. None of the cases talking about the debate go Marquardt's way. So it all comes down to two district court decisions that he says support his point of view. One of those was, had already been abrogated by 2014 when this conduct took place because it was a District of New Jersey decision, and the Third Circuit had ruled in 2011 that this DMCA argument that Marquardt is making is wrong. So now we're down to one district court decision. It's a Central District of California decision from 2007. It stands alone, and that's not enough in the face of all this other authority. And it doesn't even actually help Marquardt, because what it says is that the DMCA is inapplicable where the facts have no relation to the Internet, and here the facts do have a relation to the Internet. So Marquardt's argument that the law wasn't clearly established really lacks substance, and if the Court were to find that it had jurisdiction over the DMCA issue, for some reason it could rule on that alternative basis. So just to sum up, the District Court's frivolousness ruling is correct here. This Court has no jurisdiction over an issue of fact on copyright ownership. This Court has no jurisdiction over a standing issue, and this Court has no jurisdiction over an issue last decided long ago and never appealed. And so this appeal should be dismissed for lack of jurisdiction, and if the Court has any questions, I'd be very happy to answer them or to walk through some of the record evidence on ownership that the District Court would have relied on here. But if the Court has no further questions, then I'll rest on my briefs. Thank you, counsel. Thank you. Ms. Mather? Thank you, Your Honor. I just want to touch briefly on the timing issues. So, if this Court were to determine that, in fact, this appeal is untimely and can't be heard on the DMCA claim, again, only on the DMCA claim because the other ones could not have been raised at the motion-to-dismiss stage, but if the Court determines that, then certainly it would be putting itself at odds with all these other circuits that have said very reasonably that we are not going to implement a doctrine that will require employees to always take an appeal at the motion-to-dismiss stage or risk losing those issues. Because if that were to happen, then I am sure that every employee who is sued in the federal district courts in this district will hear the message loud and clear and will take an interlocutory appeal at every single motion-to-dismiss that is made. Do those cases say you can raise it at the motion-for-summary judgment stage, even if that is interlocutory? I mean, it seems like you are talking about different issues here. Well, so, they are the same issue in the sense that if this Court holds that raising issue A on a motion-to-dismiss and then not filing an interlocutory appeal of the motion-to-dismiss means that one loses that issue, and even if you raise it again at a motion-for-summary judgment and you have more evidence and you have more information and you are giving the court a fuller picture, somehow now when you appeal the motion-for-summary judgment, you are going to be held to be out of time because you also raised the issue on the pleadings at the motion-to-dismiss stage. I mean, essentially, that is what the plaintiffs are asking this Court to hold, and if the Court dismisses this DMCA issue on timeliness, I think that is what public employees are going to hear, that they always need to file interlocutory appeals of a motion-to-dismiss, and that is why they are related, because if the determination here is that somehow we are out of time and we cannot even raise this issue here, then the message is, well, you should have, you know, every time and always, you are going to have to raise it at a motion-to-dismiss. If you make that argument, then you are always going to have to file an interlocutory appeal on that issue and grind through the entire process, even if, as happened here, we used the time and we got more information and we made a more robust argument to the District Court on the ownership issues and on qualified immunity, so the Court had a better picture. And so, in essence, what plaintiffs are arguing is that this Court put itself at odds with all these other circuits that have said that, in fact, yes, when you file an interlocutory appeal, you can raise other issues, even if those were on the motion, at the motion-to-dismiss stage, and I would urge this Court to not put itself at odds with those circuits and essentially issue a ruling that requires all employees to always file, or not requires, but essentially incentivizes all employees to always file an interlocutory appeal at every possible stage, including the motion-to-dismiss, because, as we all know, those are almost always filed and can almost always be subject to an interlocutory appeal. I will say, with respect to the fact issue, the fact issue here is whether there even is a 97 agreement, and I'll say we do have a fact issue about that. We're not asking this Court to decide that. I don't think it would be all that hard, but we're not asking this Court to decide whether there is or is not an agreement in 97. District Court said there was a fact issue, and we're moving with that. We are taking that completely under the Kinney framework, and we are assuming those facts as true. The point is, even if plaintiffs show what they think they can show to the jury, they still can't chin the bar. They still can't make it out to be a work-for-hire, and that's the key requirement that this Court would need to engage with in order to fulfill its responsibilities to determine qualified immunity. That first prong does mean something, and if what plaintiffs allege even taken as true isn't enough to meet the standard for qualified immunity, that is a dismissal, even if we disagree, of course, whether there was even a 97 agreement in the first place. So I think that's the real issue here, is whether even taking plaintiffs' facts as true, can they get there, can they chin the bar of what it would take to make a work-for-hire And I would say, with respect to this issue of standing, this is fully addressed by Kinney and particularly this Court's concurrence in the Enbanque-Hernandez v. Mesa decision. In that case, this Court clearly did address whether rights at issue belonged to the plaintiff. It doesn't matter in a lot of cases, but in some EDGE cases it does. Here it matters. Let's see my time's up.   That will do it. Thank you.